Magistrate Judge J. Richard Creatura

FILED ____ LODGED
____ RECEIVED
Apr 10, 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALEJANDRO J. AGUILERA ROJAS,

Defendant.

CASE NO. MJ20-5076

COMPLAINT for VIOLATION

18 U.S.C. §§ 1111

BEFORE the Honorable Magistrate Judge J. Richard Creatura, United States Magistrate Judge, United States Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### (Murder in the Second Degree)

On or about February 11, 2020, in Clallam County, in the Olympic National Forest, and within the special maritime and territorial jurisdiction of the United States and the Western District of Washington, and elsewhere, ALEJANDRO J. AGUILERA ROJAS, with malice aforethought, did unlawfully kill D.L.R.

All in violation of Title 18, United States Code, Section 1111.

COMPLAINT/U.S. v. AGUILERA ROJAS - 1
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The undersigned complainant, being duly sworn, hereby deposes and states as follows:

**Background**

1. I, Colleen B. Sanders, am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed for over eighteen years. I am currently assigned to the Poulsbo Resident Agency of the Seattle Division. While employed as an FBI Agent, I have led investigations and/or participated in investigations of a wide array of federal criminal violations, including violent crimes, bank robbery, fugitives, drug crimes, organized crime, crimes against children, crimes occurring in Indian Country, and crimes in the special maritime and territorial jurisdiction of the United States. I have completed sixteen weeks of training at the FBI academy, including legal classes, investigative techniques, evidence preservation and collection, financial related crimes, and computer related crimes. I have gained experience through training and everyday work related to conducting these types of investigations.

2. Specifically, as a result of my training and experience, I am familiar with federal criminal laws and know that it is a violation of Title 18, United States Code, Section 1111, Murder in the Second Degree, to unlawfully kill another person, with malice aforethought, within the special and maritime and territorial jurisdiction of the United States. In addition to the experience I gained in working investigations of violations of federal criminal laws, I have attending training in child abuse, sexual assault, domestic violence, domestic violence strangulation, and training specific to death investigations, including a death investigations course and the International Homicide Investigator's Association basic homicide investigator's course. Furthermore, I am a member of the FBI Seattle Evidence Response Team and have attended several trainings on evidence recovery, including crime scene photography, processing of latent prints and recovery of human remains.

3. The information contained in this affidavit is based upon my own investigation, police reports, the investigations conducted by others, and the details

COMPLAINT/U.S. v. AGUILERA ROJAS - 2
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  related to me by others familiar with this matter. Because this affidavit is made for the
2  limited purpose of establishing probable cause, I have not listed each and every fact
3  known to me concerning this investigation. I have set forth the facts that I believe are
4  necessary to establish probable cause to believe that ALEJANDRO J. AGUILERA
5  ROJAS committed the crime of murder in the second degree, in violation of Title 18,
6  United States Code, Section 1111.

### Summary of Probable Cause

8      4.    On February 14, 2020, at approximately 11:11 a.m., Deputies with the
9  Clallam County Sheriff's Office (CCSO) responded to the terminus of U.S. Forest
10 Service Road 28-280 (FS 28-280) after receiving a report of a deceased female at that
11 location. Upon arrival, Deputies observed severe head trauma and multiple lacerations
12 on the female, which led them to believe that she had died by homicide. The Deputies
13 secured the scene until the Washington State Patrol (WSP) Crime Scene Response Team
14 could process it the following morning. Deputies also consulted with the local office of
15 the United States Forest Service and learned that FS 28-280 is located within the Olympic
16 National Forest. I have also received documentation from the Olympic National Forest
17 Lands Manager confirming that the location where the female body was discovered at the
18 terminus of FS 28-280 is Federal Land, managed by the U.S. Forest Service.

19     5.    CCSO Deputies contacted the FBI on February 15, 2020, and I responded
20 to the scene. Forest Service Road 28 (FS 28) begins at the end of Palo Alto Road, south
21 of Sequim, Washington, and from Sequim, leads up into the mountains of the Olympic
22 National Forest. FS 28-280 is a narrow, rutted dirt road that spurs off of FS 28. The
23 deceased female, later identified as a woman with the initials DLR, was located
24 approximately ten to fifteen yards from the end of the terminus of FS 28-280, which
25 consists of a wide dirt parking area that is large enough for several vehicles to park and
26 turn around. At the top section of the parking lot is a fire pit, and the area is surrounded
27 by woods. At the top end of the parking lot is a narrow, muddy overgrown trail which
28 drops down into the woods about ten yards. DLR was located several yards from the end

COMPLAINT/U.S. v. AGUILERA ROJAS - 3
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of this trail, lying face down with the hoods of her sweatshirt and jacket covering her head. Her feet were on the downhill slope.

6. On February 15, 2020, the WSP Crime Scene Response Team responded to and processed the scene. I was present during a portion of the processing of the scene, prior to the removal of DLR's body. I observed DLR in the location where she was found, as described above. This area was on a downslope, and between the trees there was heavy brush, branches, logs and uneven forest floor. DLR was entangled among vegetation, with small branches and leaves intermixed with her clothing and in her hair. After the body was removed from the woods and up onto the more even surface of the parking area, I observed several injuries on DLR. She had three lacerations to her head, including a laceration that had a flap of skin separated from her scalp. DLR also had a laceration on her jaw, several inches long, and a large laceration on her neck and across her throat. There were cuts on the inside of her mouth, below her bottom teeth. There were also bruises and scrapes along DLR's abdomen and side, and numerous cuts on her wrists and fingers.

7. Regarding the scene and evidentiary items collected by WSP, I made the following observations or was informed about them by other investigators present. Near the area where DLR's body was located was a larger piece of a broken bottle with the green label still intact. The printed label on the glass stated "Hornitos Reposado Tequila" and "1.75 liters," or nearly one-half gallon. At the bottom of the trail, several yards from DLR's body, was an area with clear, broken glass shards that had small pieces of a green label. I believe this to be glass shards from the tequila bottle. The glass shards had a red substance on them that appeared to be blood. I also observed possible blood substance on the low vegetation leading from the broken glass to DLR's body. Near DLR's right hand was a red Milwaukee knife. The vegetation surrounding and entangled with DLR's body also had possible blood substance on the underside. Based on my training and experience, and in consultation with other investigators, blood on the

COMPLAINT/U.S. v. AGUILERA ROJAS - 4
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

underside of vegetation in and around DLR's body is indicative of her body having struggled and/or being moved in and to that position while bleeding.

8.  At the top of the muddy trail, near the landing and parking area, and to the side of the trail, was a blue folding box-cutter knife. Later, when the knife was opened, investigators observed hair strands on the blade that appeared to be similar to DLR's hair color and type. The blade also had a red substance that appeared to be blood.

9.  CCSO detectives and I learned, from surveillance footage at a market in Sequim, that a woman matching DLR's description, along with a man, had been in a parked red 1999 Chevrolet Silverado in the store's parking lot on February 10, 2020. I learned on February 17, 2020, that the truck is registered to ALEJANDRO J. AGUILERA ROJAS, of Renton, Washington, based on Department of Licensing (DOL) records. ROJAS had registered the truck on February 15, 2020; prior to that, the DOL records for the truck showed it was registered to a different person. In the course of this investigation, I learned that ROJAS had acquired the truck prior to February 10, 2020, but had not yet transferred the registration to his name when he went to Sequim. After returning from Sequim, ROJAS registered the truck and obtained new license plates.

10. In the market surveillance video, the truck was dirty in appearance, presumably from mud and dust. A detective conducting surveillance on February 17, 2020, noted that the exterior of the truck, parked at ROJAS' residence, looked like it had been washed and cleaned. As explained below, in a law enforcement interview on February 19, 2020, ROJAS admitted that he and DLR were at the market in Sequim in his red Silverado truck on February 10, 2020.

11. DLR did not have any identification on her body when it was discovered. Detectives and I were later able to confirm her identity after learning about a missing person report out of the San Pablo Police Department in San Pablo, California. The report indicated that DLR had been last contacted by her family on or about February 10, 2020, and that DLR had told them she was in Seattle. The report further indicated that family had learned DLR was dating a man by the name of "Alex Rojas" and that DLR's

COMPLAINT/U.S. v. AGUILERA ROJAS - 5
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

family had recently communicated with ROJAS via Facebook in an attempt to learn of DLR's whereabouts.

12. The person who filed the missing person report was interviewed by detectives and told them that, from contact with ROJAS through Facebook, ROJAS claimed that he had not seen DLR since she left for a trip to Mexico in November of 2019. The reporting person also told detectives that DLR's mother had separately contacted ROJAS through Facebook, and ROJAS told her that DLR arrived in Seattle on February 10, 2020, and ROJAS had picked her up from the airport. According to the person who filed the missing person report, ROJAS claimed that DLR then went to hike with friends.

13. The body recovered from the FS 28-280 area was confirmed, on February 18, 2020, through print comparison, to be DLR, a 21-year-old female and resident of California.

14. On February 18, 2020, CCSO obtained a search warrant return from T-Mobile for ROJAS' cell phone. Preliminary analysis of the location history showed ROJAS' phone was located east of Sequim later on the day of February 10, 2020, although there were some time gaps with no data. The preliminary analysis further shows that ROJAS's phone was in the general vicinity of the Olympic National Forest, in and around FS 28-280, between approximately 8:34 a.m. and 8:44 a.m. on February 11, 2020. The location history also shows that ROJAS' phone traveled from the Sequim area to the Renton area, via Tacoma, from the late morning to mid-afternoon hours of February 11, 2020. Similarly, search warrant return of records for a United States' phone number for DLR was also preliminarily analyzed. The location history shows that DLR's phone was in the same locations and traveled the same route as ROJAS' phone on February 11, 2020. Analysis of the location history data for the phones of ROJAS and DLR is ongoing to confirm these preliminary results. No cell phone was located near or on DLR's body when it was recovered. As explained below, ROJAS admitted that he

COMPLAINT/U.S. v. AGUILERA ROJAS - 6
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

had taken DLR's cell phones with him when he left her body in the national forest, and he later discarded them.

15. On February 19, 2020, investigators contacted ROJAS and advised him of his *Miranda* rights, which ROJAS waived. ROJAS agreed to be interviewed and made statements confirming that on February 10 and 11, 2020, he had been with DLR in Sequim and the Olympic National Forest area where she was later discovered. ROJAS' statements are summarized in the following paragraphs below.

16. ROJAS was introduced to DLR by a friend two years prior. He and DLR had been in contact via text messages, they had a lot in common, and they had a "thing." He picked up DLR from the SeaTac airport on February 10, 2020, and took her to Sequim to meet friends because she was going hiking with the friends. She did not tell him the names of her friends. DLR had two phones, one from Mexico and another phone that ROJAS normally used to communicate with her. While in Sequim, they went to a market and slept in his truck, by the restrooms next to the water fountain outside of the market. The next day, February 11, 2020, ROJAS drove DLR to the woods, and then to an area near a river where he left her to meet her friends. ROJAS claimed that DLR had been in contact with her friends using her Mexican phone.

17. Later in the interview, ROJAS admitted that he had left DLR in a wooded area where he had parked for a short time, that DLR had not been intending to meet friends near Sequim, nor had he taken DLR to a river to meet any friends. He acknowledged that he and DLR had been having a "thing" for about two years and that they went to the wooded area in the national forest where DLR threatened to kill his wife and child. ROJAS claimed that DLR tried to stab him with a knife but could not reach him. ROJAS admitted to grabbing a tequila bottle from the truck and hitting DLR on the head with it. He stated that DLR had also hit her head on the opened passenger door of the truck and that knocked her out. He also claimed to have pushed DLR into the woods. ROJAS stated that when he drove away, he thought DLR was still breathing. ROJAS returned to his home around 2:00 p.m.

COMPLAINT/U.S. v. AGUILERA ROJAS - 7
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18. ROJAS initially maintained that he did not have DLR's cell phones when he left her in the forested area, but after being shown location history data for one of her phones, he admitted that her phones were in her duffle bag in his truck, and he threw the phones away en route to his Renton home. ROJAS also admitted that he had placed DLR's duffle bag with clothing in the garbage at his house. Investigators later learned that the residential garbage from ROJAS' house had been collected by the refuse service on Wednesday, February 12, 2020.

19. On February 21, 2020, I attended the autopsy of DLR's body which was conducted at the King County Medical Examiner's Office. During the autopsy, I observed the same injuries on DLR's body seen during the processing and removal of her from the scene at FS 28-280, along with numerous other injuries. These included, among others, three large gashes and other cuts on her scalp; severe bruising and trauma to her nose, upper lip, and upper facial area; several cuts and bruising on the inside of her gums and mouth; a large gash along her jaw line to the lower right cheek area; a large gash and bruising on her neck; cuts of various sizes on her hands and in between her fingers; cuts on her upper wrist on the left arm; small puncture wounds on her side and back; and numerous scratches and abrasions on her chest. Additionally, in consultation with the Medical Examiner, I learned that DLR's jugular had been punctured, her nose broken, jaw fractured, and she suffered a subdural hematoma.

20. I received a copy of the King County Medical Examiner's Office Autopsy Report on March 24, 2020. The Pathological Diagnosis was stated as follows:

    a. Blunt force injury of the head.
        i. Scalp, facial and inner oral mucosa lacerations and contusions.
        ii. Fracture of nasal bridge, right mandible, right temporal skull and lower front teeth.
        iii. Subgaleal contusions.
        iv. Thin film subdural hemorrhage and patchy subarachnoid hemorrhage.
        v. Contusion, left temporal lobe.

COMPLAINT/U.S. v. AGUILERA ROJAS - 8
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      b.      Blunt and sharp force injury of the neck.
  i. Deep incised wounds, anterior neck.
  ii. Incised wounds of larynx and fracture of laryngeal cartilage.
  iii. Transection right internal jugular vein.
  iv. Small fracture of right hyoid.

      c.      Blunt and sharp force injury of the torso.
  i. Brush abrasion, anterior torso.
  ii. Eleven puncture wounds, right posterior lateral torso.

      d.      Blunt and sharp force injury of the upper extremities.
  i. Cutaneous contusions and incised wounds.

      e.      Blunt force injuries of the lower extremities.
  i. Cutaneous contusions and abrasions.

21. The reported stated the Medical Examiner's Opinion as: "This 21 year old woman, per report, was found deceased in a wooded area. Autopsy determined the cause of death to be multiple blunt and sharp force injuries. The manner of death is homicide." The report was signed by King County Associate Medical Examiner Timothy L. Williams and Chief Medical Examiner, Richard C. Harruff.

22. On March 5, 2020, an interview of Dr. Williams was conducted concerning his autopsy findings. Dr. Williams explained that the blunt force trauma to the head was severe in nature, and the skull fracture, internal bleed in brain, and bruising on surface of brain were all indicative of multiple severe impacts on the head. He further stated that the jaw fracture and internal chipped teeth were indicative of severe impact to the face, and the lacerations and tears to the inside of mouth are indicative of a blow to the mouth. As to the cumulative nature of the injuries, Dr. Williams indicated that, taking everything into context, it is likely that the blunt force injuries could not have been self-inflicted because they would have taken a sustained, repeated effort that the injuries themselves would not have allowed for, and that the incised wounds on the arms and hands were consistent with trying to ward off an attack.

COMPLAINT/U.S. v. AGUILERA ROJAS - 9
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23. Based on my training and experience, and after consultation with the Medical Examiner, I believe that the numerous injuries sustained by DLR were primarily caused during ROJAS' violent assault of her using the tequila bottle, a knife, and possibly other weapons, that occurred near and at the location where DLR's body was found, resulting in her death.

24. This Complaint is presented by electronic means as authorized by Rule 4.1 and Rule 41(d)(3) of the Federal Rules of Criminal Procedure.

### Conclusion

25. Based on the above facts, I respectfully submit that there is probable cause to believe that ALEJANDRO J. AGUILERA ROJAS committed the crime of murder in the second degree in violation of Title 18, United States Code, Section 1111.

*Colleen B. Sanders*
COLLEEN B. SANDERS, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe ALEJANDRO J. AGUILERA ROJAS committed the offense set forth in the Complaint.

Dated this ___10th___ day of April, 2020.

Hon. J. Richard Creatura
United States Magistrate Judge

COMPLAINT/U.S. v. AGUILERA ROJAS - 10
USAO No. 2020R00177

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970